## SHIPLEY SCHOOL v. McCAUGHN, Collector.

Circuit Court of Appeals, Third Circuit.
August 16, 1929.

No. 4026.

Pierce Archer, Jr., of Philadelphia, Pa., for appellant.

George W. Coles, U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. The Shipley School, a corporation of Pennsylvania, paid under protest $2,586.66 of income and excess profit tax, which it was alleged was wrongfully assessed, and which it sought to recover in this action against the collector of internal revenue. By stipulation the case was tried by a judge, who heard the proofs and entered judgment for the collector. On appeal to this court, the question involved is whether the Shipley School comes within the provisions of section 200[1] of the Revenue Act of 1918 (40 Stat. 1058), and is entitled to exemption under subsection (e), § 218[2] (40 Stat. 1070), thereof.

This is a case of the creation, maintenance, and perpetuation of school teaching based on character building, moral inspiration, and ideals imparted by close personal contact between the teacher and the taught. These elements have been maintained in teaching continuity since 1893 by the three Misses Shipley, who in that year founded the school and carried it on, using leased property, until 1916. It has since that time been conducted by Miss Howland, a niece of the Misses Shipley, and by Miss Brownell, who were selected by the Misses Shipley to continue the personal teaching work they had

---

[1] "The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

[2] " 'Personal service corporations' shall not be subject to taxation under this title, but the individual stockholders thereof shall be taxed in the same manner, as the members of partnerships."

done for over 20 years. This personal teaching work of the three original owners aimed to secure the same results these two succeeding owners have likewise worked for and accomplished. Increase of pupils, additional branches of study, the introduction of athletics, etc., have necessitated additions to plant and staff, but have not changed the original personal teaching, oversight, and control of the heads of the school which were the dominant features of the Shipley School.

The school owned no real estate, but has used leased property. The capital stock is owned by Miss Howland and Miss Brownell, with the exception of three qualifying shares held by the school physician. The capital consists of furniture and equipment valued at $19,000, and more than $5,000 cash, in all $25,000. The school gave some scholarships at reduced rates; the boarding department, which was carried on only to prevent dominating local environment, was conducted at a loss; books and supplies were sold at cost; its revenue arose solely from pupils.

The principals, the Misses Howland and Brownell, give their entire time to the school and live in it, and alone direct and control it. Miss Howland has complete charge of the work in the upper school, takes part in the English work, and teaches the Bible in the lower school. She personally meets the girls of every class weekly, and discusses with them matters of discipline, morals, and education. She personally knows every pupil and the parents of each. So personal is the relation of these ladies in the minds of parents that, when they come to the school, they are not satisfied to discuss matters with the staff teachers, but insist on personal interviews with Miss Howland and Miss Brownell. It is quite evident that from 1893 to 1911 the personality of the Misses Shipley was in fact what constituted the Shipley School, and, unless this personal school had then passed to women of like ideals, who gave personal attention, personal teaching, and personal exclusive oversight to the school, it would have lost that which made it what it was.

Turning from the educational product of this personal school, reflected in the character building of its pupils, to the requirements of the statute, we find, first, that its money income must be ascribed to the activities of the Misses Howland and Brownell, its sole stockholders, for without these two women's daily, personal work, the school would simply shrivel and die; second, these women are regularly and exclusively and solely engaged in the active conduct of the corporation's affairs; third, the income of the school comes not from the meager capital employed, but in reality from the personal service rendered by these women drawing to it the patronage it enjoys. Such work, instead of being one from which tribute money should be exacted, is one to which tribute should be given, and we believe, in holding this personal school as falling within the exemption of the statute, we construe the law as it is and as Congress meant it should be.

The judgment below is therefore reversed, and the record remanded, with directions to enter judgment in favor of the plaintiffs.